# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| ISSAC S. KNOTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-CV-32-KAC-CHS ) |
| MARY WEST and RICK GENTRY, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff, a prisoner of the Bedford County Jail, has filed a pro se complaint purporting to allege violations of 42 U.S.C. § 1983 relating to jail disciplinary proceedings against him [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* [*Id.*] will be **GRANTED**, and this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under Section 1983.

**I.    FILING FEE**

It appears from Plaintiff's motion for leave to proceed *in forma pauperis* [*Id.*[1]] that he is unable to pay the filing fee. Therefore, his motion will be **GRANTED**.

Because Plaintiff is an inmate in the Bedford County Jail, he will be **ASSESSED** the civil filing fee of three hundred fifty dollars ($350.00). The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue,

---

[1] While Plaintiff's certificate setting forth his inmate trust account balance is not certified, it appears that a jail official filled in the account balance on the form and signed it [Doc. 1 p. 3]. Accordingly, the Court considers it the "institutional equivalent" of his certified inmate trust account statement, pursuant to 28 U.S.C. § 1915(a)(2).

Chattanooga, Tennessee 37402, as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this procedure, the Clerk will be **DIRECTED** to provide a copy of this Memorandum Opinion and accompanying Judgment Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This Memorandum Opinion and accompanying Judgment Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the

language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B. Complaint Allegations[2]

According to Plaintiff, on June 3, 2021, while Plaintiff was in the Bedford County Jail, jail officials alleged that he had violated the jail's rules or policies by attempting to intimidate staff, creating a disturbance, disrespecting staff, disrupting a program, provoking violence, and exhibiting disrespect [Doc. 2 p. 8]. Accordingly, on June 7, 2021, jail officials sent Plaintiff an "Inmate Rule Violation Notice" notifying him that they would hold a disciplinary hearing for those violations on June 14, 2021 [*Id.*]. The one-week delay for the disciplinary hearing was due to a correctional officer having an "off week" [*Id.* at 18].

Also, on June 6, 2021, jail officials found prescribed medication in Plaintiff's cell and therefore issued him another "Inmate Rule Violation Notice" [*Id.* at 16]. As a result of this

---

[2] Many of these allegations are taken from documents Plaintiff filed with his complaint, which are a part of his complaint "for all purposes." Fed. R. Civ. P. 10(c).

3

violation, Plaintiff had a disciplinary hearing on June 9, 2021 [*Id.* at 18, 20]. Plaintiff was found guilty of the violation but received no "[a]ctive [s]anctions" [*Id.*]. In the "[s]anctions" portion of the forms setting forth the disciplinary hearing findings, the Disciplinary Hearing Officer[3] noted that the fact that this was Plaintiff's first disciplinary hearing was a mitigating circumstance [*Id.*]. Plaintiff appealed this decision, and Defendant Mary West upheld it [*Id.* at 22].

Subsequently, on June 14, 2021, jail officials held a disciplinary hearing for Plaintiff's June 3 violations [*Id.* at 13]. Prior to this hearing, the Disciplinary Hearing Officer (1) denied Plaintiff's request to have his medical records after Plaintiff did not respond to his follow up question asking about this request; (2) denied Plaintiff's request to have a nurse who was not present at the incident underlying the violations present at the disciplinary hearing; and (3) denied Plaintiff's request to watch the video footage of the relevant incident for security reasons [*Id.* at 12]. At the disciplinary hearing, Plaintiff was found guilty of attempting to intimidate staff, creating a disturbance, disrespect towards staff, and disrupting a program [*Id.* at 13]. He was found not guilty of the violation for provoking violence and his violation for disrespect was dismissed, as it was addressed through the violation for disrespect towards staff, for which he was found guilty [*Id.* at 8, 12, 13]. As his "active sanctions" for the violations of which he was found guilty, Plaintiff lost his phone, visitation, and electronic communications privileges for thirty days and was placed in segregation for thirty days [*Id.*]. Plaintiff appealed this decision, and Defendant West denied that appeal [*Id.* at 10]. In doing so, Defendant West specifically noted that, with regard to sanctions, it was Plaintiff's second disciplinary hearing "in the space of a few weeks," and "[s]anctions increase each time you go before a [d]isciplinary [h]earing and are found guilty" [*Id.*].

---

[3] It appears from the signatures on the relevant forms that Defendant Rick Gentry is the Disciplinary Hearing Officer [*See, e.g., id.* at 19].

4

An inmate named Terry Walker also had a disciplinary hearing on June 14, 2021 and was found guilty of seventeen violations arising out of his aggressive action towards staff that caused staff to believe he was going to attack them [*Id.* at 14–15[4]]. As his "active sanctions" for the violations of which he was found guilty, Mr. Walker lost his phone, visitation, and electronic communications privileges for forty-five days, received four days of segregation, and lost five days of good behavior credits [*Id.*]. This was Mr. Walker's first disciplinary hearing, which was noted as a mitigating circumstance on the form setting forth the disciplinary hearing findings [*Id.*].

In his complaint, Plaintiff states that as his June 3 violation occurred before his June 6 violation, his first disciplinary hearing should have been for his June 3 violation, which would have resulted in this mitigating circumstance being considered with regard to that violation "but instead it was increased and mishandled" [*Id.* at 5]. Plaintiff also alleges that the fact that Mr. Walker was found guilty of seventeen violations on June 14, 2021 but received consideration of mitigating circumstances and less segregation time than Plaintiff received establishes discrimination "between cases and races" [*Id.* at 5–6]. Additionally, Plaintiff states that it is his understanding that depriving inmates of verbal communications with attorneys "while in pre-trial" is unconstitutional and violates Tennessee law and state facility rules and regulations [*Id.* at 6]. Plaintiff then specifies that his complaint alleges discrimination in violation of his Fourteenth Amendment rights "as well as several other rights" and claims that Defendant Gentry "has a history

---

[4] Mr. Walker was found guilty of assault on staff, threatening staff, attempting to intimidate staff, creating a disturbance, disrespecting staff, disrupting a program or service, failing to cooperate during headcount, physically resisting lawful actions of staff, provoking violence, refusing to promptly obey staff orders/instruction, touching or striking staff, conduct prejudicial to good order and discipline, conduct unbecoming of an inmate, creating a minor disturbance, disrespect, violation of inmate rules, and making loud and unnecessary noise [*Id.* at 14].

5

of being unfair toward blacks/African Americans and was fired from Coffee County, TN Sheriff['s] Dep[artment] for being a racist" [*Id.*].

Plaintiff has sued Mary West and Rick Gentry and seeks compensatory and punitive damages in the amount of one million dollars for discrimination, violation of his right to due process, and cruel and unusual conditions of his confinement [*Id.* at 1, 7].

### C. Analysis

#### 1. Due Process

First, while Plaintiff states that he seeks relief for a violation of his due process rights, he does not set forth any facts or allegations to support such a claim [*Id.* at 7]. However, to the extent Plaintiff challenges the fact that his disciplinary hearing for his June 6 violation occurred before his disciplinary hearing for his June 3 violation and/or the fact that the Disciplinary Hearing Officer denied his requests for certain evidence for his disciplinary hearing for his June 3 violation, Plaintiff has failed to set forth facts from which the Court can plausibly infer any violation of Plaintiff's right to due process.

It is well-established that the Due Process Clause does not protect every change in a prisoner's conditions of confinement. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Rather, a prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the resulting restraint "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 486–87 (1995).

Plaintiff has not alleged that any of his relevant disciplinary convictions or sanctions affected the duration of his sentence. To the contrary, as set forth above, the complaint and the documents Plaintiff filed in support of his complaint establish that Plaintiff did not receive any

6

sanction as a result of being found guilty in his first disciplinary hearing, and that his only sanctions for being found guilty of several violations in his second disciplinary hearing were that he lost his phone, visitation, and electronic communications privileges for thirty days and was placed in segregation for thirty days. These sanctions did not subject Plaintiff to an "atypical and significant hardship" that deprived him of a constitutionally protected liberty interest. *Id.* at 486–7 (holding that a thirty day placement in administrative segregation did not trigger due process protections); *Rowe v. Ward*, No. 4:16-CV-P39-JHM, 2016 WL 3875954, at *3 (W.D. Ky. July 13, 2016) (finding that a prisoner plaintiff did "not have a liberty interest in phone privileges to which due process can attach") (citing *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)); *Bazzetta v. McGinnis*, 430 F.3d 795, 803-05 (6th Cir. 2005) (concluding that a prison's policy permanently banning virtually all visitation for prisoners found guilty of two or more substance abuse violations does not "rise[ ] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause").

Accordingly, as Plaintiff did not suffer the denial of a protected liberty interest as a result of his disciplinary hearings, he was not entitled to due process for those hearings, and his complaint fails to state a claim for violation of due process upon which relief may be granted under Section 1983. *See Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000) (holding that the prisoner plaintiff "had no due process liberty interest in the minor misconduct hearing because he did not allege any punishment that affected the duration of his confinement, or that constituted an atypical and significant hardship" and therefore affirming the district court's dismissal of the complaint).

### 2. Conditions of Confinement

Plaintiff also states that he seeks relief for "cruel and harsh conditions of living inside a penal institution" [Doc. 2 p. 7]. However, Plaintiff does not set forth any information about the conditions of his confinement, much less any facts from which the Court can plausibly infer that any condition of his confinement violates his constitutional rights. *Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992) (providing that only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" establish a cognizable conditions-of-confinement claim under the Eighth Amendment) (citations and quotations omitted).

To the extent that this allegation could be construed to refer to Plaintiff's claim that jail officials denied him the ability to access his attorney through verbal communication, that claim is addressed below. However, to the extent this allegation refers to other, unspecified conditions of Plaintiff's confinement, it fails to state a claim for violation of the Eighth Amendment which relief may be granted under Section 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (holding that "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a plausible claim for relief).

### 3. Equal Protection

Plaintiff also asserts a claim for discrimination arising out of the fact that Mr. Walker received less segregation time for the violations of which he was found guilty in his disciplinary hearing on June 14, 2021 than Plaintiff did for the violations of which he was found guilty in his disciplinary hearing on the same day [*Id.* at 6–7]. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. For a complaint to state a claim for violation of the Equal Protection Clause, it must allege that the plaintiff has been treated differently than other similarly situated individuals.

*Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (providing that, in order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis'" and that the "'threshold element of an equal protection claim is disparate treatment'" (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006) and *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)); *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (noting that the Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike").

Plaintiff does not state his own race, or the race of Mr. Walker, in his complaint. However, even if the Court could plausibly infer that Plaintiff is African American and Mr. Walker is not from the fact that Plaintiff refers to "Title VI Discrimination against Blacks" once in his complaint [Doc. 2 p. 2] and states that Defendant Gentry "has a history of being unfair towards blacks/African Americans" in another part of his complaint [*Id.* at 6], his complaint still fails to state a claim upon which relief may be granted under Section 1983 for violation of the Equal Protection Clause. It is apparent from documents filed in support of the complaint that Plaintiff and Mr. Walker were not similarly situated at the time of their disciplinary hearings on June 14, 2021. Rather, the record establishes that Mr. Walker's disciplinary hearing on June 14, 2021 was his first such hearing, and that this was a mitigating circumstance that the Disciplinary Hearing Officer considered in deciding what sanctions Mr. Walker received.[5] On the other hand, the June 14 disciplinary hearing

---

[5] Notably, while Mr. Walker was found guilty of many more violations than Plaintiff and received less time in segregation than Plaintiff, Mr. Walker also lost five days of good behavior credits as a sanction resulting from his June 14 disciplinary hearing, while Plaintiff lost none. Mr.

was Plaintiff's second disciplinary hearing at which he was found guilty within less than a week, and, according to the records Plaintiff incorporated into his complaint, disciplinary hearing "[s]anctions increase" with each disciplinary hearing where the prisoner is found guilty [*Id.* at 10].[6]

As such, even if the Court assumes that Plaintiff and Mr. Walker were of different races and that the actions underlying their prison violations were sufficiently alike for purposes of this analysis, Plaintiff has failed to set forth facts from which the Court can plausibly infer that he and Mr. Walker were similarly situated in their disciplinary hearings on June 14, such that his allegations could state a claim upon which relief may be granted under Section 1983 for violation of the Equal Protection clause. *See Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379 (finding that a complaint failed to state an Equal Protection claim where it did not "make a plausible allegation that similarly situated organizations and individuals, of a different political viewpoint, have not been subject to the same alleged treatment by Defendants"); *Nali v. Ekman*, 355 Fed. App'x 909, 913 (6th Cir. 2009) (stating that a complaint's allegation of race discrimination in prison discipline must be supported by allegations "that the people not disciplined were similarly situated and of a different race" to state an Equal Protection claim).

### 4. Denial of Access to Courts

Plaintiff also alleges that Defendants' deprivation of his ability to have verbal communication with his attorney as a pretrial prisoner violated his constitutional rights, Tennessee law, and/or state facility rules and regulations [*Id.* at 6]. However, it is apparent from Plaintiff's

---

Walker lost his phone, visitation, and electronic communications privileges for forty-five days, while Plaintiff lost these privileges for thirty days.

[6] While Plaintiff alleges in his complaint that his June 14 disciplinary hearing should have been his first due to the timing of his violations [*Id.* at 5], this fails to allege a due process violation, as set forth above. Moreover, Plaintiff has not set forth any other facts from which the Court can plausibly infer that the timing of this disciplinary hearing resulted from any other violation of his constitutional rights.

10

allegations that he was represented by counsel at all times relevant to this claim. And nothing in the complaint suggests that his inability to have verbal communications with his attorney for a brief period of time prejudiced Plaintiff in any way. Accordingly, Plaintiff's allegations do not allow the Court to plausibly infer any denial of Plaintiff's right to access the courts. *See Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983) (providing that once a prisoner has appointed counsel, the state has fulfilled its constitutional obligation to provide full access to courts); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead and prove that his meritorious claims have been prejudiced by the alleged denial of access to the courts to state a claim for denial of access to courts). Moreover, to the extent Plaintiff seek to hold Defendants liable under Section 1983 for this allegation because his inability to have verbal communication with his attorney violated Tennessee laws and/or state facility regulations, such allegations fail to state a claim upon which relief may be granted under Section 1983, which provides redress only for violations of federal constitutional or statutory rights. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citation omitted).

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**;

2. Plaintiff will be **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk will be **DIRECTED** to provide a copy of this Memorandum Opinion and accompanying Judgment Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under Section 1983;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

*[signature]*